# IN THE COURT OF APPEALS OF IOWA

No. 20-1609
Filed March 17, 2021

**IN THE INTEREST OF T.T. and A.B.,**
**Minor Children,**

**S.A., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

     A mother appeals the termination of her parental rights.  **AFFIRMED.**

     David R. Fiester, Cedar Rapids, for appellant mother.

     Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

     Judith Jennings Hoover, Cedar Rapids, attorney and guardian ad litem for minor children.

     Considered by Bower, C.J., and Doyle and Mullins, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to T.T., born in 2010, and A.B., born in 2011, pursuant to Iowa Code section 232.116(1)(f) (2020).[1] She contends grounds for termination were not proved, termination of her parental rights is not in the children's best interests, and permissive factors allow the court to avoid termination of her parental rights. Because the mother's substance-abuse and mental-health concerns have not been adequately addressed and interfere with her ability to provide consistent and stable parenting, we affirm the termination of the mother's parental rights.

T.T. and A.B. are two of the mother's seven children, none of whom are in the mother's custody.[2] T.T.'s and A.B.'s fathers' parental rights were also terminated, and neither father appeals. The children were removed from their mother's custody on June 4, 2019, due to the mother's aggressive and erratic behavior and suspected methamphetamine use. T.T. and A.B. have been placed with their three younger siblings in the care of their stepfather since the children were adjudicated children in need of assistance (CINA) in June 2019. The mother

---

[1] Section 232.116(1)(f) allows the court to terminate parental rights if all of the following are proved:
    (1) The child is four years of age or older.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[2] From 2008 to 2011 the family was involved with juvenile court proceedings due to the parents' methamphetamine use and domestic violence.

was ordered to participate in random drug testing, obtain a substance-abuse and a psychiatric/psychological evaluation, and follow any treatment recommendations. The stepfather obtained an order restraining the mother from coming on the property or removing the children.

The family was offered services by the department of human services (DHS). The mother's visits remained fully supervised. The mother refused to submit to drug testing, claiming she did not trust the system.

The mother was arrested on December 3 and charged with possession of a controlled substance, methamphetamine.

The mother obtained a psychological evaluation on March 12, 2020. The evaluator's report indicated the mother was twenty minutes late. The evaluator observed the mother's "[t]hought process was tangential and difficult to follow at times." The mother stated she started using methamphetamine when she was nineteen years old and her last use was "this morning." The mother reported that methamphetamine "helps her [posttraumatic stress disorder (PTSD)] episodes."[3] The evaluator summarized her findings:

> Given that [the mother] admitted to using meth on the day of testing, scores on the tests cannot be trusted. She over-reported on most instruments, which may mean she has significant genuine psychological distress, but which may also mean the assessments are not fully accurate. Diagnoses are made based on history and self-report.

Diagnoses were PTSD; stimulant use disorder, amphetamine-type substance, moderate; generalized anxiety disorder; and major depressive disorder, recurrent

---

[3] The mother reported having PTSD "episodes" that include physical symptoms and impaired mental functioning.

episode, moderate. The evaluator recommended intensive substance-abuse treatment; abstaining from using methamphetamine and other drugs; and establishing and maintaining stable housing, consistent income, and supportive and healthy relationships. Also recommended was continuing individual counseling for PTSD, anxiety, and depression.

The mother later told her DHS case manager she had not used methamphetamine the morning of her mental-health evaluation; rather, she was "testing" the evaluator and felt that her report of using methamphetamine should have led to calling off the evaluation.

As of May 2020, the case manager summarized the lack of progress in the juvenile proceedings. It was noted the mother had told family support providers that she used methamphetamine. The case manager also noted the mother "tends to focus on what has gone wrong in this case and wanting to fix those perceived wrongs" rather than "focus[] on what she needs to do in order to get the children back." The case manager wrote that after recently understanding "drug testing is going to be a huge factor in being able to move forward with her case," the mother agreed to get a test, but then missed the first call to be tested. The case manager also wrote: "[The mother] is her own worst enemy in getting the children returned to her." The report indicated the mother was living with T.T.'s father, who also was not participating in court-ordered drug testing.

At the May 27 permanency hearing, the mother stated she had obtained a substance-abuse evaluation and that no treatment was recommended, but no documentation of the evaluation was provided to DHS. There was evidence the mother violated the restraining order between her and the stepfather by constantly

driving by his home and contacting his coworker to speak negatively of him. The court changed the goal in T.T.'s case to termination of parental rights and adoption. However, the goal with respect to A.B. remained reunification with the mother.

On June 8, the mother provided a sample for urinalysis (UA) and had a drug patch placed. The UA was negative for all substances. The patch was positive for methamphetamine.

On July 16, a petition to terminate the mother's rights to T.T. and A.B. was filed.

The case manager's October 28 report to the court states the mother "has admitted to a relapse during this reporting time and has also admitted to struggling." The mother had not provided any further drug testing through DHS and was not engaged in any mental-health treatment. She summarized:

> During this reporting period, [the mother] has continued to refuse to do drug testing through DHS. She has admitted to having a relapse a couple months ago and has recently admitted to struggling with her substance abuse issues. . . . The children have been out of home for over a year and are in need of having permanency in their lives. They need to know where they are going to be long term and not have their lives disrupted any more than it has been.

A termination-of-parental-rights hearing was held on November 2. The mother testified she was self-employed, attending online schooling, and planning to develop a drug rehab facility using equine therapy. She stated she also was involved in helping others locate family members subjected to human trafficking, which required she engage with "certain circles" hanging around with "what society calls junkies or meth heads or drug dealers." She called this work "my addiction." With regard to her own substance-abuse issues, the mother testified she had been a recovering addict for six years and acknowledged use of methamphetamine in

November 2018 and October 2019. She denied any more recent use, contending the positive sweat patch was the result of someone intentionally switching her vape pen for one containing methamphetamine.

Service providers testified to concerns regarding drug usage by the mother prior to her visits. The family safety specialist (FSS), who had been involved in the supervised visits throughout the life of the case, testified the mother often used her visits to vent about issues and discuss her work with human trafficking victims rather than focusing on the children. The FSS expressed concern about the mother's passion being directed at a "new path every couple visits" rather than on the children and their need for stability. She testified it is obvious the mother loves her children and they love her but the children were more bonded to their siblings and T.T. and A.B. were bonded with their stepfather, who they call "dad."

The case manager testified the stepfather had become a licensed foster care provider and was willing to adopt T.T. and A.B. and facilitate visits with their older siblings. She testified the children needed stability. The children's guardian ad litem joined in recommending terminating the mother's parental rights.

On November 23, the juvenile court terminated the mother's parental rights, concluding there was clear and convincing evidence the children could not be returned to the mother's custody "now, or in the reasonably near future." The court found T.T. and A.B. were fully integrated into the home with their stepfather and siblings and wished to remain there with their siblings.

The mother appeals. She concedes the children are both older than four years of age, have been adjudicated CINA, and have been removed from her custody for more than the last twelve consecutive months. *See* Iowa Code

§ 232.116(f)(1)–(3).  She asserts, however, the children could be returned to her at the present time and, thus, grounds for termination do not exist.  *See id.* § 232.116(f)(4).  We cannot agree.

On our de novo review, *see In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), there is clear and convincing evidence the children cannot be returned to the mother's custody at present without the risk of adjudicatory harm.  The concerns that were present in June 2019 remain concerns at the time of the termination hearing.  The mother has consistently refused drug testing and denies the need for substance-abuse treatment, she has reported relapses over the course of the proceedings, while denying those same relapses later.  She has been unable or unwilling to honestly assess her substance abuse.  She lives with T.T.'s father, who also has failed to address his own substance-abuse issues.  The mother testified her last mental-health treatment was in March 2020.  The mother has yet to adequately recognize the affects her substance abuse and mental health have on the children.

"Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests."  *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012).  Giving primary consideration to the children's safety, the best placement for furthering their long-term nurturing and growth, and to their physical, mental and emotional needs as required by section 232.116(2), we conclude termination of the mother's parental rights is in the children's best interest.  The mother has been unwilling or unable to address her substance-abuse and mental-health issues.  She has chosen her other passions over her children.  And as the juvenile court observed, she "needs mental health

therapy that she is not engaging in at the current time." The children need permanency and stability now. T.T. and A.B. have been in a safe and stable home with their stepfather and siblings. They are fully integrated into that family. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (citation omitted)).

Iowa Code section 232.116(3) provides several permissive factors the court may use to save the parent-child relationship "based on the unique circumstances of each case and the best interests of the child." *A.M.,* 843 N.W.2d at 113 (citation omitted). The mother contends her bond with the children weighs against termination. Section 232.116(3)(c) provides the court need not terminate a parent's rights if it finds by clear and convincing evidence "that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We acknowledge the children love their mother. Yet, they are more bonded to each other, their stepfather, and their siblings. Their need for permanency in a safe, sober, and consistent home environment supports the termination of the mother's parental rights. We therefore affirm.

**AFFIRMED.**